**GOODLEY MCCARTHY LLC**
Ryan P. McCarthy
NJ Attorney ID: 219022016
ryan@gmlaborlaw.com
James E. Goodley
NJ Attorney ID: 048572013
james@gmlaborlaw.com
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 394-0541

**JULIEN  MIRER & SINGLA & GOLDSTEIN, PLLC**
Ria Julien (*admitted pro hac vice*)
Jeanne Mirer (*pro hac vice* motion forthcoming)
1 Whitehall Street, 16th Floor
New York, NY 10004
(212) 231-2235
jmirer@workingpeopleslaw.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------------------------------x
EDWIN CRUZ MORALES, GERSON POLANCO, EDUARDO
MIXI, ANTONIO BRUNO, LUCIANO CALIXTO, ISAAC DIAZ,
FERNANDO LEYVA, EDGAR LUNA, CORNELIO RINCON
LEON, LEONEL FLORES, EDWIN ALBA, RAUL HERRERA,
LUCIANO LOPEZ, RAFAEL RODRIGUEZ, NICHOLAS
FIGUEROA, LUIS CASTILLO, FERNANDO SANCHEZ,
ARISMENDIZ HIDALGO, JOSE GRANDE
HERNANDEZ and ANGEL M. VARGAS MARTINEZ
on behalf of themselves,

        **Index No.: 23-cv-00045
(MEF)(LDW)**

        Plaintiffs,

v.

NEXT STOP 2006, INC., CHAIM LITTMAN
and CAROLINA LITTMAN, ABIVAD LLC dba OFFICE
FURNITURE NYC, and JOSHUA BERNSTEIN
jointly and severally,

        **PLAINTIFFS'  SECOND
AMENDED COMPLAINT WITH
JURY DEMAND**

        Defendants.
--------------------------------------------------------------------------------x

Plaintiffs, EDWIN CRUZ MORALES, GERSON POLANCO, EDUARDO MIXI, ANTONIO BRUNO, LUCIANO CALIXTO, ISAAC DIAZ, FERNANDO LEYVA, EDGAR LUNA, CORNELIO RINCON LEON, LEONEL FLORES, EDWIN ALBA, RAUL HERRERA, LUCIANO LOPEZ, RAFAEL RODRIGUEZ, NICHOLAS FIGUEROA, LUIS CASTILLO, FERNANDO SANCHEZ, ARISMENDIZ HIDALGO, JOSE GRANDE HERNANDEZ and ANGEL M. VARGAS MARTINEZ individually, and upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## **NATURE OF THE ACTION**

1.      By this lawsuit Plaintiffs seek to recover unpaid minimum wages, unpaid overtime, and statutory penalties for notice-and-record keeping violations. Plaintiffs are hourly employees jointly employed by Defendants.

2.      Defendants have deprived Plaintiffs and their co-workers of minimum wages and overtime pay since at least on or about March 20, 2019, in violation of the Fair Labor Standards Act ("FLSA").

3.      Defendants have deprived Plaintiffs of minimum wages and overtime pay since at least on or about March 20, 2016 in violation of the New York Labor Law ("NYLL") and/or the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.* ("NJWHL") and the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.10 ("NJWPL").

4.      Defendants have violated notice-and-record keeping requirements by failing to provide statements along with wages listing the name of employee, name of employer, address and phone number of employer, rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other, gross wages, deductions, allowances, if any, claimed as part of the minimum wage, and net wages. Defendants have further violated the

requirement that they provide, upon employee request, explanations of how wages were calculated in violation of NYLL § 195(3) and/or N.J.S.A. 34:11-4.4.

5.      Defendants have violated notice-and-record keeping requirements by failing to provide employees with wage notices as required on February 1 of every year in violation of NYLL § 195(1) or at every time the statutory minimum wage increased.

6.      In addition, various Plaintiffs bring claims for discrimination under the NYCHRL, and for retaliation in connection with wrongful termination under the New York Labor Law ("NYLL") and/or the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.* ("NJWHL") and the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.10 ("NJWPL") and the New Jersey Conscientious Employee Protection Act,

## JURISDICTION AND VENUE

7.      Jurisdiction is proper as this Court has original federal question jurisdiction under 28 U.S.C. § 1331 since this case is brought under the FLSA, 29 U.S.C. §§ 201, *et seq.* This Court has supplemental jurisdiction over the NYLL, and/or NJWHL and NJWPL claims, as they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

8.      Plaintiffs performed approximately eighty (80) percent of their work in New York state, where they installed and removed office furniture for Defendants' clientele largely situated in the Wall Street and Midtown sections of New York City. The NYLL is applicable to Plaintiffs as to all work actually performed in New York, or as to all work performed for Defendants where New York is found to be the primary locus of their employment.

9.      Plaintiffs began and ended their work days from a Jersey City base. The NJWHL and NJWPL are applicable to Plaintiffs as to all work actually  performed in New Jersey or  as to

all work performed for Defendants where New Jersey is found to be the primary locus of their employment.

10.     All Defendants are employers engaged in commerce as defined in the FLSA, 29 U.S.C. § 203(s) and under the NYLL, NJWHL and NJWPL.

11.     All Defendants are subject to personal jurisdiction in the State of New Jersey  as they are residents of New Jersey.

12.     Venue is proper in this District because Defendants conduct business in this Judicial District, and some of the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

### DEFENDANTS

13.     Defendant Next Stop 2006, Inc. (hereafter "Defendant Next Stop" or "Next Stop"), is a New Jersey  for-profit corporation doing business as Next Stop with offices at 11 Maywood Court, Fair Lawn, NJ 07410.

14.     Defendant Next Stop 2006, Inc entered into contracts with New York City  based businesses to supply goods and services.

15.     Defendant Next Stop 2006, Inc. did in fact perform services in New York City.

16.     Individual Defendant Chaim Littman (hereinafter "Defendant Chaim Littman") on information and belief is a resident of Passaic County, New Jersey. Defendant Chaim Littman at all times relevant to this complaint has been an owner and manager of Next Stop.

17.     On a weekly basis Defendant Chaim Littman would come to New York City to meet with clients in connection with his business.

18.    Defendant Chaim Littman had supervisory control over all Plaintiffs at all times relevant. Further, Defendant Chaim Littman had substantial control over Plaintiffs' wages, hours, and working conditions.

19.    Individual Defendant Carolina Littman (hereinafter "Defendant Carolina Littman") on information and belief is a resident of Passaic County, New Jersey. Defendant Carolina Littman at all times relevant to this complaint has been an owner and manager of Next Stop.

20.    Defendant Carolina Littman had supervisory control over all Plaintiffs at all times relevant. Further, Defendant Carolina Littman had substantial control over Plaintiffs' wages, hours, and working conditions by managing their payroll.

21.    At various times, when Defendant Chaim Littman was out of the country, Defendant Carolina Littman would communicate by email with largely New York City based clients to secure contracts in connection with their business.

22.    Defendant Abivad LLC (hereinafter "Defendant Abivad") is a New Jersey LLC doing business as Office Furniture NYC with offices at 145 Johnson Ave Teaneck, NJ 07666.

23.    Abivad specializes in office "clean outs" and buys, transports, stores, ships and installs furniture.

24.    Defendant Abivad entered into contracts with New York City based businesses to supply goods and services.

25.    Defendant Abivad did in fact perform services in New York City.

26.    Individual Defendant Joshua Bernstein (hereinafter "Defendant Bernstein") on information and belief is a resident of Teaneck, New Jersey.

27.    Defendant Bernstein at all times relevant to this complaint has been an owner and manager of Abivad.

28.    On a weekly basis Plaintiffs would perform clean outs where Defendant Bernstein would come to the New York City job sites to oversee Plaintiffs' work.

29.    Defendant Bernstein had supervisory control over Plaintiffs and would brief Plaintiffs on the scope of the job and what materials should be salvaged.

30.    Defendant Bernstein directly at New York City job sites, and through his secretary, who sometimes visited the Clifton Street warehouse, would direct Plaintiffs work, and exercise control over the terms and conditions of their employment, including stating their scope of work, and regulating their breaks.

31.    At all times relevant Defendant Chaim Littman held Defendant Bernstein out as his business partner.

32.    Corporate Defendants Next Stop and Abivad jointly operate and/or own a warehouse at 28 Federal St., Clifton, NJ.

33.    Defendants are part of a single integrated enterprise that jointly employed Plaintiffs at all times relevant to this complaint, as the defendants are engaged in activities performed for a common business purpose as defined by FLSA, 29 U.S.C. ¬ß 203(r).

34.    Upon information and belief, based on information provided by Plaintiffs, employees of Defendants, Next Stop and Abivad are an enterprise whose annual gross volume of sales made, or business done, is in excess of $500,000. Specifically, Next Stop and Abivad are thriving office furniture installation, clean out, and furniture sales businesses with many significant business contracts. As such, based on Plaintiffs' personal knowledge of Defendants' business, as well as upon information and belief, Defendants are an enterprise engaged in commerce as defined by 29 U.S.C. § 203.

35.    Upon information and belief, as well as first-hand knowledge of Plaintiffs, employees of Defendants regularly conducted interstate business. Specifically Defendants has regularly accepted credit card payments debiting funds from out-of-state bank accounts and performed work in New York, while being based in New Jersey.

36.    Defendants are covered employers within the meaning of the FLSA 29 U.S.C. § 203(d),  NYLL § 190, NJWHL and NJWPL .

## PLAINTIFFS

### Allegations Common To All Plaintiffs

37.    For all of the Plaintiffs whose individual factual allegations are stated below, (and except those specifically noted) the following common facts apply:

a.   At all times relevant, Defendants failed to provide Plaintiffs with accurate wage statements or explanations of how their wages were calculated in violation of NYLL § 195(3) and/or N.J.S.A. 34:11-4.4.

b.   At all times relevant, Defendants failed to provide Plaintiffs with accurate wage notices as required on February 1 of every year in violation of NYLL § 195(1).

c.   At all times relevant, Defendants have failed to pay Plaintiffs in accordance with the minimum wage provisions of FLSA, 29 U.S.C. § 206,  NYLL § 652 and/or N.JS.A. 34:11-56a4(a)..

d.   At all times relevant, Defendants paid Plaintiffs a day rate rather than on an hourly basis as required.

e.   At all times relevant, Defendants failed to pay Plaintiffs at the overtime rate for all hours in excess of forty (40) hours per workweek, in violation of the overtime

provisions of FLSA, 29 U.S.C. § 206, the NYLL §§ 650 *et seq.* and /or N.J.S. A. 34:11-56a4(b)(1) and regulations promulgated thereunder.

f.   Plaintiffs were paid in cash at various times, and then by check and paystubs which show an unlawful day rate.

g.   At all times Defendants unlawful deductions from Plaintiffs' pay, requiring drivers to pay for parking tickets for company trucks and non-drivers to pay for supplies and equipment in violation of the FLSA prohibition on kickbacks and the NYLL and N.J.S.A. 34:11-4.4.

h.   At various times, Defendants would have Plaintiffs unload items for two hours and then dismiss them for the day without any pay whatsoever.

i.   At various times on those rare occasions when Plaintiffs finished work at 3 or 4pm—that is, after working 8 or 9 hours—Defendants paid Plaintiffs for a half a day only based on their "day rate."

j.   Prior to 2018 Defendants unlawfully mischaracterized Plaintiffs as independent contractors until the New Jersey Department of Labor required them to pay their workers correctly.

## DEFENDANTS' MINIMUM WAGE VIOLATIONS

38.   The FLSA, NYLL, NJWHL and NJWPL require that employees be paid a minimum wage, as per 29 U.S.C. § 206; N.Y. Lab. Law § 652, , N.J.S.A. 34:11-56a et seq. and N.J.S.A. ¬ß 34:11-4.10.

39.   The federal hourly minimum wage during the times relevant to this action was $7.25

40.     The New York state hourly minimum wage during the times relevant to this action, applicable to large employers, was:

- on and after December 31, 2015: $9.00 per hour;

- on and after December 31, 2016: $11.00 per hour;

- on and after December 31, 2017: $13.00 per hour; and

- on and after December 31, 2018: $15.00 per hour.

41.     The New Jersey state hourly minimum wage during the times relevant to this action was:

- on and after January 1, 2016: $8.38 per hour;

- on and after January 1, 2017: $8.44 per hour;

- on and after January 1, 2018: $8.60 per hour;

- on and after January 1, 2019: $10.00 per hour;

- on and after January 1, 2020: $11.00 per hour;

- on and after January 1, 2021: $12.00 per hour;

- on and after January 1, 2022: $13.00 per hour;

42.     At all times relevant Defendants paid Plaintiffs a day rate and failed to pay Plaintiffs on an hourly basis and to pay minimum wages.

43.     Defendants knowingly and willfully failed to keep full and accurate records of Plaintiffs' hours and wages, including any allowances claimed, in violation of the FLSA, NYLL and federal and state regulations. 29 U.S.C. § 211(c); N.Y. Lab. Law § 661; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6, and/or N.J.S.A, 34:11-56a20 .

44.     Upon information and belief, during Plaintiffs' employment with Defendants, Defendants failed to display, in a place accessible to employees and in a visually conspicuous

manner, the notices of employee rights as required under the FLSA and federal and state regulations or otherwise provide Plaintiffs with information about their legal rights.

## DEFENDANTS' OVERTIME VIOLATIONS

45.    At no time did Defendants pay Plaintiffs overtime.

46.    Upon information and belief, Defendants knowingly and willfully failed to keep full and accurate records of Plaintiffs' actual hours worked and wages, in violation of the NYLL and state regulations. N.Y. Lab. Law § 661; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.6 and/or the NJWHL and NJWPL.

### **Individual Factual Allegations**

**Plaintiff Edwin Cruz**

47.    Plaintiff Edwin Cruz ("Plaintiff Cruz") is an adult Hispanic individual who is a resident of Passaic, New Jersey.

48.    As a Driver/Helper for Defendants, Plaintiff Cruz is a covered employee as defined by FLSA, 29 U.S.C. § 203(e),  NYLL § 651(5),  NYLL § 190, N.J.S.A. 34:11-56a1(h) and N.J.S.A. 34:11-4.1(b).

49.    Plaintiff Cruz has been employed by Defendants from on or about 2016 to in or about February 2022.

50.    Prior to 2018, in addition to other wage and hour violations,  Plaintiff Cruz received no pay stubs and was improperly miscategorized as an independent contractor.

51.    At all times Plaintiff Cruz worked from 7am to on average 9 pm daily, or 14 hours per day.

52.    Plaintiff worked approximately 5 months every year.

53.     During his months on, Plaintiff Cruz ordinarily worked Monday to Friday or 70 hours per week.

54.     A few times a month Plaintiff Cruz was asked to work Saturday, in which case he worked approximately 84 hours per week for 6 days' work.

55.     Plaintiff received pay according to a day rate on pay stubs with days worked in place of hours worked.

56.     Ordinarily, he was paid his day rate in cash for his work on Saturday,

57.     At all times relevant Plaintiff Cruz was paid an unlawful day rate. His day rate began at $150 and ended at $170.

58.     Plaintiff Cruz was not paid overtime and minimum wage for all hours worked as required.

59.     At all times relevant Plaintiff Cruz was deprived of breaks and sick days.

60.     At all times relevant Plaintiff Cruz was subject to unlawful deductions requiring him to pay parking tickets incurred for the benefit of the business and/or at the instruction or with the consent of Defendant Littman in violation of federal and/or state law.

61.     Plaintiff was charged more than $1000 in tickets as unlawful deductions from his wages.

62.     At various times Plaintiff Cruz subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

63.     When Plaintiff Cruz was paid a flat daily rate of $150, and was thus paid a total of $750 per week for five days or approximately 70 hours, for a straight time rate of approximately $10.71 per hour in 2016 forward.

64.    When Plaintiff Cruz was paid a flat daily rate of $170, and was thus paid a total of $850 for five days or approximately 70 hours, for a straight time rate of approximately $12.14 per hour at the time of his termination of employment.

65.    When Plaintiff Cruz worked until 3 or 4pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

66.    When Plaintiff Cruz was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Gerson Polanco**

67.    Plaintiff Gerson Polanco ("Plaintiff Polanco") is an adult Hispanic individual who is a resident of Passaic County, State of New Jersey.

68.    As a Driver for Defendants, Plaintiff Polanco is a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5), NYLL § 190, N.J.S.A. 34:11-56a1(h) and  N.J.S.A. 34:11-4.1(b).

69.    Plaintiff Polanco was employed by Defendants from in or about Summer of 2018 to September 2020.

70.    Ordinarily, Plaintiff Polanco worked from 7am to on average 9 pm daily, or 14 hours per day.

71.    Plaintiff Polanco worked a seasonal schedule that included 5 days per week from March through December ("the regular season") and on average 3 days per week from January through February ("the slow season"). At various times in the regular season Plaintiff Polanco was required to work Saturday, or 6 days per week.

72.     During the regular season, Plaintiff Polanco ordinarily worked Monday to Friday or 70 hours per week

73.     Plaintiff Polanco received pay according to a day rate on pay stubs with days worked in place of hours worked.

74.     When he worked Saturdays, these days were sometimes paid in cash and not included on his pay stubs.

75.     Plaintiff Polanco was initially paid an unlawful day rate of $130 and after a few months he was paid an unlawful day rate of $150.

76.     Plaintiff Polanco was not paid overtime and minimum wage for all hours worked as required.

77.     At all times relevant Plaintiff Polanco was deprived of breaks and sick days.

78.     At all times relevant Plaintiff Polanco was subject to unlawful deductions by being required to pay parking tickets incurred for the benefit of the company at the instruction of the Company and specifically by Defendant Littman who instructed Plaintiff Polanco to park in spots that were not designated for commercial vehicles, in violation of federal and state law.

79.     At various times Plaintiff Polanco was subject to threats by Defendant Littman if he did not accept a Saturday shift. Defendant Littman would call on Thursday or Friday to state that Saturday work was mandatory and if Plaintiffs did not work, he would withhold their checks on Friday for work already performed, or fire them the following Monday. At various times Defendant Littman did in fact withhold Plaintiff Polanco's check, and/or fired him. In every case Plaintiff Polanco would return to work within a day or two.

80.     When Plaintiff Polanco was paid a flat daily rate of $130, he was thus paid a total of $750 for five days or approximately 70 hours, for a straight time rate of $9.29 per hour.

81.     When Plaintiff Polanco was paid a flat daily rate of $150, he was thus paid a total of $650 for five days or approximately 70 hours, for a straight time rate of $10.71 per hour.

82.     When Plaintiff Polanco worked until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

83.     When Plaintiff Polanco was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Eduardo Mixi**

84.     Plaintiff Eduardo Mixi ("Plaintiff Mixi") is an adult Hispanic individual who is a resident of Passaic, New Jersey.

85.     At all times relevant Plaintiff Mixi was perceived as an immigrant.

86.     As an Installer/Driver for Defendants, Plaintiff Mixi is a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5),  NYLL § 190, N.J.S.A. 34:11-56a1(h) and N.J.S.A. 34:11-4.1(b).

87.     Plaintiff Mixi was employed by Defendants from in or about June 2010 until February 2021.

88.     Prior to 2018, in addition to other wage and hour violations,  Plaintiff Mixi received no pay stubs and was improperly miscategorized as an independent contractor.

89.     Ordinarily, Plaintiff Mixi worked from approximately 7 am to on average 10 pm to 11pm daily, or 15-16 hours per day.

90.     Plaintiff Mixi worked a seasonal schedule that included 5 days per week from March through November (the "regular season") and 3 to 4 days per week from December through February (the "slow season").

91.     During the regular season, Plaintiff Mixi ordinarily worked Monday to Friday or approximately 70 hours per week.

92.     Plaintiff Mixi received pay according to a day rate on pay stubs with days worked in place of hours worked.

93.     Plaintiff Mixi also occasionally worked Saturdays, which were sometimes paid in cash and not included on his pay stubs.

94.     From in or about 2014 to the end of 2016 he was paid $180 per day as an installer.

95.     From in or about 2017 to the end of his tenure he was paid $200 per day as an installer/driver.

96.     Plaintiff Mixi was not paid overtime and minimum wage for all hours as required.

97.     At all times relevant Plaintiff Mixi was deprived of breaks and sick days.

98.     At various times Plaintiff Mixi was subject to unlawful deductions by requiring him to make equipment or supply purchases for the benefit of the company with Plaintiff Mixi's own money.

99.     At various times Plaintiff Mixi was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

100.    When Plaintiff Mixi was paid a flat daily rate of $180, he was thus paid a total of $900 for five days or approximately 70 hours, for a straight time rate of $12.85 per hour through the end of 2016.

101.    When Plaintiff Mixi was paid a flat daily rate of $200, he was thus paid a total of $1000 for five days or approximately 70 hours, for a straight time rate of $14.28 per hour through 2021.

102.    When Plaintiff Mixi worked until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

103.    When Plaintiff Mixi was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

104.    Plaintiff Mixi was out for a week prior to the termination of his employment, sick with stress-related chronic gastritis. Upon his return he was assigned a heavy work assignment and asked for a lesser task given that he was not feeling well. In response to this request for accommodation, individual Defendant Chaim Littman told Plaintiff Mixi that he did not need him.

105.    Plaintiff was not called back after working for Plaintiff for over a decade. Further Plaintiff was fired after he made a request for sick days pursuant to New York Law and/or N.J.S.A. 34:11D *et seq.*.

**Plaintiff Antonio Bruno**

106.    Plaintiff Antonio Bruno ("Plaintiff Bruno") is an adult Hispanic individual who is a resident of Passaic, New Jersey.

107.    At all times relevant Plaintiff Bruno was perceived as an immigrant.

108.    As a Helper for Defendants, Plaintiff Bruno is a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5),  NYLL § 190, N.J.S.A. 34:11-56a1(h) and  N.J.S.A. 34:11-4.1(b).

109.    As a Helper, at no time was Plaintiff Bruno responsible for the proper loading of company vehicles for safety purposes.

110.    Plaintiff Bruno was employed by Defendants from in or about October 2017 to March 2021.

111.    Prior to 2018, in addition to other wage and hour violations,    Plaintiff Bruno received no pay stubs and was improperly miscategorized as an independent contractor.

112.    Plaintiff Bruno worked a seasonal schedule that included 5 days per week from March through November (the "regular season") and 3 to 4 days per week from December through February (the "slow season").

113.    During his regular season, Plaintiff Bruno ordinarily worked Monday to Friday or approximately 70 hours per week.

114.    Occasionally, Plaintiff Bruno was asked to work Saturday, in which case he worked approximately 84 hours per week for 6 days' work.

115.    Ordinarily, Plaintiff Bruno worked from 7am to on average 9 pm daily, or 14 hours per day.

116.    Plaintiff Bruno received pay according to a day rate on pay stubs with days worked in place of hours worked, for his work Monday to Friday and the occasional Saturday.

117.    At all times relevant Plaintiff Bruno was paid an unlawful day rate of $110.

118.    Plaintiff Bruno was not paid overtime and minimum wage for all hours worked as required.

119.    At all times relevant Plaintiff Bruno was deprived of breaks and sick days.

120.    At various times Plaintiff Bruno was subject to unlawful deductions by requiring him to make equipment or supply purchases for the benefit of the company with Plaintiff Bruno's own money.

121.    At various times Plaintiff Bruno was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

122.    Plaintiff Bruno was paid a flat daily rate of $110, and was thus paid a total of $550 for five days or approximately 70 hours, for a straight time rate of $7.86 per hour.

123.    When Plaintiff Bruno worked until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

124.    When Plaintiff Bruno was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Luciano Calixto**

125.    Plaintiff Luciano Calixto ("Plaintiff Calixto") is an adult Hispanic individual who is a resident of Passaic, State of New Jersey.

126.    At all times relevant Plaintiff Calixto was perceived as an immigrant.

127.    As an Installer and Construction Worker for Defendants, Plaintiff Calixto was a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5),  NYLL § 190, N.J.S.A. 34:11-56a1(h) and  N.J.S.A. 34:11-4.1(b)..

128.    As an Installer and Construction Worker, at no time was Plaintiff Calixto responsible for the proper loading of company vehicles for safety purposes.

129.    Plaintiff Calixto was employed by Defendants from in or about Summer of 2020 to in or about the last week of April or first week of May 2022, when he was subjected to unlawful termination.

130.    Ordinarily Plaintiff Calixto worked a seasonal schedule of 5 days per week from March through November (the "regular season") and 3 to 4 days per week from December through February (the "slow season").

131.    Ordinarily, Plaintiff Calixto worked from 7 am to on average 9 pm daily, or 14 hours per day.

132.    During his regular season, Plaintiff Calixto ordinarily worked Monday to Friday or approximately 70 hours per week.

133.    In addition, for approximately a month in the summer of 2021 Plaintiff Calixto was required to work Saturdays and Sunday. On these days he received a day rate in cash at the end of the day. He worked from 7am to approximately 9pm during these dates as well.

134.    In or about December 2021 Plaintiff Calixto was required to work Saturdays at Defendant Littman's house doing construction and he was paid an unlawful day rate. This day was paid by check along with his other days' work. On these days he worked from 7am to approximately to 6pm.

135.    Plaintiff Calixto received pay according to a day rate on pay stubs with days worked in place of hours worked, for his work Monday to Friday.

136.    Plaintiff Calixto began working at an unlawful day rate of $120. Prior to his unlawful termination, Plaintiff Calixto received an unlawful day rate of $150.

137.    Plaintiff Calixto was not paid overtime and minimum wage for all hours worked as required.

138.    At all times relevant Plaintiff Calixto was deprived of breaks and sick days.

139.    At various times Plaintiff Calixto was subject to unlawful deductions by requiring him to make equipment or supply purchases for the benefit of the company with Plaintiff Calixto's own money.

140.    At various times Plaintiff Calixto was subject to threats if he requested a day off.

141.    Additionally, when Plaintiff Calixto was required to clean the warehouse basement and remove furniture that was damaged by a flood in 2021, he was required to work in a wet environment without protective equipment such as boot or gloves for 2 weeks. There Plaintiff Calixto became sick with a throat infection and hives from the exposure and had to take three weeks off work for which he was not paid despite bringing in medical documentation.

142.    When Plaintiff Calixto was paid a flat daily rate of $120, he was thus paid a total of $600 for five days or 70 hours, for a straight time rate of $8.57 per hour.

143.    When Plaintiff Calixto was paid a flat daily rate of $150, he was thus paid a total of $750 for five days or 70 hours, for a straight time rate of $10.71 per hour to in or about the last week of April or first week of May 2022, when he was subjected to unlawful termination.

144.    When Plaintiff Calixto worked until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

145.    When Plaintiff Calixto was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Isaac Diaz**

146.    Plaintiff Isaac Diaz ("Plaintiff Diaz") is an adult Hispanic individual who is a resident of Passaic, State of New Jersey.

147.    As an Installer for Defendants, Plaintiff Diaz was a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5), NYLL § 190, N.J.S.A. 34:11-56a1(h) and N.J.S.A. 34:11-4.1(b).

148.    As an Installer at no time was Plaintiff Diaz responsible for the proper loading of company vehicles for safety purposes.

149.    Plaintiff Diaz was employed by Defendants from in or about November 2013 to in or about the last week of April or first week of May 2022, when he was subjected to unlawful termination.

150.    Prior to 2018, in addition to other wage and hour violations,  Plaintiff Diaz received no pay stubs and was improperly miscategorized as an independent contractor.

151.    Ordinarily Plaintiff Diaz worked a seasonal schedule of 5 days per week from March through November (the "regular season") and 3 to 4 days per week from December through February (the "slow season").

152.    Ordinarily, Plaintiff Diaz worked from 7 am to on average 9 pm daily, or 14 hours per day.

153.    During his regular season, Plaintiff Diaz ordinarily worked Monday to Friday or approximately 70 hours per week (except for two months during the beginning of the pandemic when he was off).

154.    Plaintiff Diaz received pay according to a day rate on pay stubs with days worked in place of hours worked.

155.    At various times Plaintiff Diaz worked Saturdays, which were sometimes paid in cash and not included on the pay stubs.

156.    Plaintiff Diaz began working at an unlawful day rate of $110. Prior to his unlawful termination, Plaintiff Diaz received an unlawful day rate of $180.

157.    Plaintiff Diaz was not paid overtime and minimum wage for all hours worked as required.

158.    At all times relevant Plaintiff Diaz was deprived of breaks and sick days.

159.    At various times Plaintiff Diaz was subject to unlawful deductions, requiring him to make equipment purchases or supplies for the benefit of the company with Plaintiff Diaz's own money.

160.    At various times Plaintiff Diaz was subject to threats that if he did not accept extra shifts hours or shifts Defendant would withhold his pay for work already performed.

161.    When Plaintiff Diaz was paid a flat daily rate of $110, he was thus paid a total of $550 for five days or 70 hours, for a straight time rate of $7.86 per hour.

162.    When Plaintiff Diaz was paid a flat daily rate of $180, he was thus paid $900 per week for 70 hours, for a straight time rate of $12.86 per hour to in or about the last week of April or first week of May 2022, when he was subjected to unlawful termination.

163.    When Plaintiff Diaz worked until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

164.    When Plaintiff Diaz was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Fernando Leyva**

165.    Plaintiff Fernando Leyva ("Plaintiff Leyva") is an adult Hispanic individual who is a resident of Passaic, State of New Jersey.

166.    At all times relevant Plaintiff Leyva was perceived as an immigrant.

167.    As a Driver/Installer for Defendants, Plaintiff Leyva is a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5), NYLL § 190, N.J.S.A. 34:11-56a1(h) and N.J.S.A. 34:11-4.1(b).

168.    Plaintiff Leyva has been employed by Defendants from in or about July 2019 to on or about April 21, 2022.

169.    Ordinarily Plaintiff Leyva worked a seasonal schedule of 5 days per week from March through November (the "regular season") and 4 days per week from December through February (the "slow season").

170.    Ordinarily, Plaintiff Leyva worked from 7 am to on average 9 pm daily, or 14 hours per day.

171.    During his regular season, Plaintiff Leyva ordinarily worked Monday to Friday or approximately 70 hours per week.

172.    Plaintiff Leyva received pay according to a day rate on pay stubs with days worked in place of hours worked.

173.    Plaintiff Leyva began working at an unlawful day rate of $140. He was subsequently raised to $150 per pay and he now receives $180 per day.

174.    Plaintiff Leyva was not paid overtime and minimum wage for all hours worked as required.

175.    At all times relevant Plaintiff Leyva was deprived of breaks and sick days.

176.    At all times relevant Plaintiff Leyva was subject to unlawful deductions by being required to make equipment purchases for the benefit of the company, to pay parking tickets incurred for the benefit of the company at the instruction of the Company and specifically by Defendant Littman who instructed Plaintiff Leyva to park in spots that were not designated for commercial vehicles.

177.    At various times Plaintiff Leyva was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

178.    When Plaintiff Leyva was paid a flat daily rate of $140, he was thus paid a total of $700 for five days or 70 hours, for a straight time rate of $10 per hour.

179.    When Plaintiff Leyva is paid a flat daily rate of $180, he is thus paid $900 per week for 70 hours, for a straight time rate of $12.86 per hour at until the end of his employment.

180.    When Plaintiff Levya works until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

181.    When Plaintiff Levya was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

182.    Additionally on January 31, 2022 Plaintiff Leyva was injured at work requiring stitches in his eyes.

183.    Defendants indicated that they would pay him only one sick day when he required additional days off.

**Plaintiff Edgar Luna**

184.    Plaintiff Edgar Luna ("Plaintiff Luna") is an adult Hispanic individual who is a resident of Passaic, State of New Jersey.

185.    At all times relevant Plaintiff Luna was perceived as an immigrant.

186.    As a Helper for Defendants, Plaintiff Luna is a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5), NYLL § 190, N.J.S.A. 34:11-56a1(h) and  N.J.S.A. 34:11-4.1(b).

187.    At no time was Plaintiff responsible for the proper loading of the vehicle for safety purposes.

188.    Plaintiff Luna was employed by Defendants from in or about fall of 2018 to in or about January 2020.

189.    Ordinarily, Plaintiff Luna worked from 7 am to on average 9 pm daily, or 14 hours per day.

190.    Ordinarily, Plaintiff Luna worked a seasonal schedule of 5 days per week from March through November (the "regular season"), and sometimes a sixth day on Saturday, and 2 to 3 days per week from December through February (the "slow season").

191.    During the regular season, Plaintiff Luna ordinarily worked Monday to Friday or 70 hours per week.

192.    At all times Plaintiff Luna was paid an unlawful day rate of $120.

193.    Plaintiff Luna was not paid overtime and minimum wage for all hours worked as required.

194.    At all times relevant Plaintiff Luna was deprived of breaks and sick days.

195.    At all times relevant Plaintiff Luna was subject to unlawful deductions requiring him to make equipment or supplies purchases for the benefit of the company with Plaintiff Luna's own money.

196.    At various times Plaintiff Luna was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

197.    When Plaintiff Luna was paid a flat daily rate of $120, he was thus paid a total of $600 for five days or 70 hours, for a straight time rate of $8.57 per hour.

198.    When Plaintiff Luna worked until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

199.     When Plaintiff Luna was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Cornelio Rincon Leon**

200.     Plaintiff Cornelio Rincon Leon ("Plaintiff Leon") is an adult Hispanic individual who is a resident of Passaic, State of New York.

201.     At all times relevant Plaintiff Leon was perceived as an immigrant.

202.     As an Installer for Defendants, Plaintiff Leon was a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5),  NYLL § 190, N.J.S.A. 34:11-56a1(h) and  N.J.S.A. 34:11-4.1(b).

203.     At no time was Plaintiff Leon responsible for the proper loading of the vehicle for safety purposes.

204.     Plaintiff Leon was employed by Defendants from in or about the beginning of 2017 to in or about the last week of April or  first week of May 2022, when he was subjected to unlawful termination.

205.     Prior to 2018, in addition to other wage and hour violations,  Plaintiff Leon received no pay stubs and was improperly miscategorized as an independent contractor.

206.     Ordinarily Plaintiff Leon works from 7 am to on average 9 pm daily, or 14 hours per day.

207.     Ordinarily, Plaintiff Leon worked a 5 days per week, Monday to Friday.

208.     Plaintiff Leon received pay according to a day rate on pay stubs with days worked in place of hours worked, for his work Monday to Friday.

209.     Plaintiff Leon began working at an unlawful day rate of $120.

210.    Plaintiff Leon was not paid overtime and minimum wage for all hours worked as required.

211.    At all times relevant Plaintiff Leon was deprived of breaks and sick days.

212.    At all times relevant Plaintiff Leon was subject to unlawful deductions by requiring him to make equipment and supplies purchases for the benefit of the company with Plaintiff Leon's own money.

213.    At various times Plaintiff Leon was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

214.    When Plaintiff Leon was paid a flat daily rate of $120, he was thus paid a total of $600 per week for 70 hours, for a straight time rate of $8.57 per hour.

215.    When Plaintiff Leon worked until 3 or 4pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

216.    When Plaintiff Leon was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Leonel Flores**

217.    Plaintiff Leonel Flores ("Plaintiff Flores") is an adult Hispanic individual who is a resident of Passaic County, State of New Jersey.

218.    At all times relevant Plaintiff Flores was perceived as an immigrant.

219.    As an Installer for Defendants, Plaintiff Flores is a covered employee as defined by FLSA, 29 U.S.C. § 203(e),  NYLL § 651(5),  NYLL § 190, N.J.S.A. 34:11-56a1(h) and  N.J.S.A. 34:11-4.1(b).

220.    At no time was Plaintiff Flores responsible for the proper loading of the company vehicle for safety purposes.

221.    Plaintiff Flores was employed by Defendants from in or about September 2019 to the end of January 2021.

222.    Ordinarily Plaintiff Flores worked from 7am to on average 9 pm daily, or 14 hours per day.

223.    Ordinarily Plaintiff Flores ordinarily worked Monday to Friday or 70 hours per week.

224.    Plaintiff Flores received pay according to a day rate on pay stubs with days worked in place of hours worked.

225.    At all times relevant Plaintiff Flores was paid an unlawful day rate, which started at  $130, and which was increased to $150 at the time of the termination of his employment.

226.    Plaintiff Flores was not  paid overtime and minimum wage for all hours worked as required.

227.    At all times relevant Plaintiff Flores was deprived of breaks and sick days.

228.    At various times Plaintiff Flores was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

229.    When Plaintiff Flores was paid a flat daily rate of $, $130, he was thus paid a total of $650 for five days or 70 hours, for a straight time rate of $$9.29 per hour.

230.    Plaintiff Flores was later paid a flat daily rate of $150, and was thus paid $750 for five days or 70 hours, for a straight time rate of $10.71 per hour.

231.    When Plaintiff Flores worked until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

232.    When Plaintiff Flores was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Edwin Alba**

233.    Plaintiff Edwin Alba ("Plaintiff Alba") is an adult Hispanic individual who is a resident of Passaic, New Jersey.

234.    At all times relevant Plaintiff Alba was perceived as an immigrant.

235.    As an Installer for Defendants, Plaintiff Alba was a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5),  NYLL § 190, N.J.S.A. 34:11-56a1(h) and  N.J.S.A. 34:11-4.1(b).

236.    As an Installer, at no time was Plaintiff Alba responsible for the proper loading of the vehicle for safety purposes.

237.    Plaintiff Alba was employed by Defendants from in or about February 2018 to in or about March 2020 and then again from April 2020 to in or about the last week of April or first week of May 2022, when he was subjected to unlawful termination.

238.    Ordinarily, Plaintiff Alba worked from 7 am to on average 9 pm daily, or 14 hours per day.

239.    Plaintiff Alba ordinarily worked a schedule of 5 days per week, Monday through Friday.

240.    Plaintiff Alba received pay according to a day rate on pay stubs with days worked in place of hours worked.

241.    Plaintiff Alba began working at an unlawful day rate of $110. Plaintiff Alba's unlawful day rate thereafter increased to $140.

242.    Plaintiff Alba was not  paid overtime and minimum wage for all hours worked as required.

243.    At all times relevant Plaintiff Alba was deprived of breaks and sick days.

244.    At all times relevant Plaintiff Alba was subject to unlawful deductions by requiring him to make equipment and supplies purchases for the benefit of the company with Plaintiff Alba's own money.

245.    At various times Plaintiff Alba was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

246.    When Plaintiff Alba was paid a flat daily rate of $110, he was thus paid a total of $550 for five days or 70 hours, for a straight time rate of $7.86 per hour.

247.    Plaintiff Alba was later paid a flat daily rate of $140, he was thus paid $700 for five days or 70 hours, for a straight time rate of $10 per hour.

248.    When Plaintiff Alba worked until 3 or 4pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

249.    When Plaintiff Alba was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Raul Herrera**

250.    Plaintiff Raul Herrera ("Plaintiff Herrera") is an adult Hispanic individual who is a resident of Passaic, State of Jersey.

251.    At all times relevant Plaintiff Herrera was perceived as an immigrant.

252.    As a Helper/Installer for Defendants, Plaintiff Herrera is a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5),  NYLL § 190, N.J.S.A. 34:11-56a1(h) and N.J.S.A. 34:11-4.1(b).

253.    As a Helper/ Installer, at no time was Plaintiff Alba responsible for the proper loading of the vehicle for safety purposes.

254.    Plaintiff Herrera was employed by Defendants from in or about April 2016 to in or about late 2020.

255.    Ordinarily, Plaintiff Herrera worked from 7 am to on average 9 pm daily, or 14 hours per day.

256.    Ordinarily, Plaintiff Herrera worked a schedule of 5 days per week, Monday through Friday.

257.    Plaintiff Herrera received pay according to a day rate on pay stubs with days worked in place of hours worked.

258.    Plaintiff Herrera began working at an unlawful day rate of $125.

259.    At the end of his employment he received an unlawful day rate of $160.

260.    Plaintiff Herrera was not   paid overtime and minimum wage for all hours worked as required.

261.    At all times relevant Plaintiff Herrera was deprived of breaks and sick days.

262.    At all times relevant Plaintiff Herrera was subject to unlawful deductions by requiring him to make equipment and supplies purchases for the benefit of the company with Plaintiff Herrera's own money.

263.    At various times Plaintiff Herrera was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

264.     When Plaintiff Herrera was paid a flat daily rate of $125, he was thus paid a total of $625 for five days or 70 hours, for a straight time rate of $8.93 per hour.

265.     When Plaintiff Herrera worked until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

266.     When Plaintiff Herrera was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Luciano Lopez**

267.     Plaintiff Luciano Lopez ("Plaintiff Lopez") is an adult Hispanic individual who is a resident of Clifton, State of Jersey.

268.     At all times relevant Plaintiff Lopez was perceived as an immigrant.

269.     As an Installer for Defendants, Plaintiff Lopez is a covered employee as defined by FLSA, 29 U.S.C. § 203(e),  NYLL § 651(5),  NYLL § 190, N.J.S.A. 34:11-56a1(h) and  N.J.S.A. 34:11-4.1(b).

270.     At no time was Plaintiff Lopez responsible for the proper loading of the vehicle for safety purposes.

271.     Plaintiff Lopez was employed by Defendants from in or about Summer 2016 to in or about August 2021.

272.     Prior to 2018, in addition to other wage and hour violations,    Plaintiff Lopez received no pay stubs and was improperly miscategorized as an independent contractor.

273.     Ordinarily, Plaintiff Lopez worked from 7 am to on average 9 pm daily, or 14 hours per day.

274.    Ordinarily, Plaintiff Lopez worked a seasonal schedule of 5 days per week from March through December (the "regular season") and on average 4 days per week from January through February ("the slow season").

275.    Ordinarily, in the regular season Plaintiff Lopez worked a schedule of 5 days per week, Monday through Friday.

276.    Plaintiff Lopez received pay according to a day rate on pay stubs with days worked in place of hours worked.

277.    On occasion in the regular season Plaintiff Lopez was required to work Saturdays for which he was occasionally paid cash and which was not included in his pay stubs.

278.    Plaintiff Lopez began working at an unlawful day rate of $120.

279.    Plaintiff Lopez  was not  paid overtime and minimum wage for all hours worked as required.

280.    At all times relevant Plaintiff Lopez was deprived of breaks and sick days.

281.    At various times Plaintiff Lopez requested sick days due to injuries suffered at work.

282.    At all times relevant Plaintiff Lopez was subject to unlawful deductions by requiring him to make equipment and supplies purchases for the benefit of the company with Plaintiff Lopez's own money.

283.    At various times Plaintiff Lopez was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

284.    Plaintiff Lopez was paid a flat daily rate of $120, and was thus paid a total of $600 for five days or 70 hours, for a straight time rate of $8.57 per hour.

285.     When Plaintiff Lopez worked until 3 or 4pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

286.     When Plaintiff Lopez was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Rafael Rodriguez**

287.     Plaintiff Rafael Rodriguez ("Plaintiff Rodriguez") is an adult Hispanic individual who is a resident of Bellview, State of New Jersey.

288.     As a Helper, Installer and Driver for Defendants, Plaintiff Rodriguez was a covered employee as defined by NYLL § 651(5),  NYLL § 190, N.J.S.A. 34:11-56a1(h) and  N.J.S.A. 34:11-4.1(b).

289.     Plaintiff Rodriguez was employed by Defendants from in or about April 23, 2016 to in or about February 2021 and again from January 2022 to in or about the last week of April 2022.

290.     Prior to 2018, in addition to other wage and hour violations,   Plaintiff Rodriguez received no pay stubs and was improperly miscategorized as an independent contractor.

291.     Ordinarily Plaintiff Rodriguez worked from 7 am to on average 9 pm daily, or 14 hours per day.

292.     Ordinarily Plaintiff Rodriguez worked a schedule of 5 days per week, Monday through Friday.

293.     Plaintiff Rodriguez received pay according to a day rate on pay stubs with days worked in place of hours worked.

294. Plaintiff Rodriguez began working at an unlawful day rate of $110 and at the time of his termination earned an unlawful day rate of $175.

295. Plaintiff Rodriguez was not paid overtime and minimum wage for all hours worked as required.

296. At all times relevant Plaintiff Rodriguez was deprived of breaks and sick days.

297. At all times relevant Plaintiff Rodriguez was subject to unlawful deductions by requiring him to make equipment purchases for the benefit of the company with Plaintiff Rodriguez's own money.

298. At various times Plaintiff Rodriguez was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

299. When Plaintiff Rodriguez was paid a flat daily rate of $110, he thus paid a total of $550 for five days or 70 hours, for a straight time rate of $7.86 per hour.

300. When Plaintiff Rodriguez was paid a flat daily rate of $175, he thus paid a total of $875 for five days or 70 hours, for a straight time rate of $12.50 per hour.

301. When Plaintiff Rodriguez worked until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

302. When Plaintiff Rodriguez was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of applicable state minimum wage laws.

**Plaintiff Nicholas Figueroa**

303. Plaintiff Nicholas Figueroa ("Plaintiff Figueroa") is an adult Hispanic individual who is a resident of Morris, State of New Jersey.

304.    As a Lead Installer/Supervisor for Defendants, Plaintiff Figueroa is a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5),  NYLL § 190, N.J.S.A. 34:11-56a1(h) and  N.J.S.A. 34:11-4.1(b).

305.    At no time was Plaintiff Figueroa responsible for the proper loading of the company vehicle for safety purposes.

306.    Plaintiff Figueroa was employed by Defendants from in or about Spring 2007 to in or about December 2020.

307.    Prior to 2018, in addition to other wage and hour violations,   Plaintiff Figueroa received no pay stubs and was improperly miscategorized as an independent contractor.

308.    Ordinarily, Plaintiff Figueroa worked from 7 am to on average 9 pm daily, or 14 hours per day.

309.    Ordinarily, Plaintiff Figueroa worked a schedule of 5 days per week, Monday through Friday.

310.    Plaintiff Figueroa received pay according to a day rate on pay stubs with days worked in place of hours worked.

311.    Plaintiff Figueroa began working at an unlawful day rate of $150.

312.    Plaintiff Figueroa was not paid overtime and minimum wage for all hours worked as required.

313.    At all times relevant Plaintiff Figueroa was deprived of breaks and sick days.

314.    At all times relevant Plaintiff Figueroa was subject to unlawful deductions by requiring him to make equipment and supplies purchases for the benefit of the company with Plaintiff Figueroa 's own money.

315. At various times Plaintiff Figueroa was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

316. When Plaintiff Figueroa was paid a flat daily rate of $150, he was thus paid a total of $750 for five days or 70 hours, for a straight time rate of $10.71 per hour.

317. When Plaintiff Figueroa worked until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

318. When Plaintiff Figueroa was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Luis Castillo**

319. Plaintiff Luis Castillo ("Plaintiff Castillo") is an adult Hispanic individual who is a resident of Passaic, State of New Jersey.

320. At all times relevant Plaintiff Castillo was perceived as an immigrant.

321. As a Helper for Defendants, Plaintiff Castillo is a covered employee as defined by FLSA, 29 U.S.C. § 203(e) and NYLL§ 651(5) and NYLL § 190, N.J.S.A. 34:11-56a1(h) and N.J.S.A. 34:11-4.1(b).

322. At no time was Plaintiff Castillo responsible for the proper loading of the company vehicle for safety purposes.

323. Plaintiff Castillo was employed by Defendants from in or about Summer 2008 to in or about March 2021.

324. Prior to 2018, in addition to other wage violations, Plaintiff Castillo received no pay stubs and was improperly miscategorized as an independent contractor.

325.     Ordinarily, Plaintiff Castillo worked from 7 am to on average 9 pm daily, or 14 hours per day.

326.     Ordinarily, Plaintiff Castillo worked a schedule of 5 days per week, Monday through Friday.

327.     Plaintiff Castillo received pay according to a day rate on pay stubs with days worked in place of hours worked.

328.     Plaintiff Castillo began working at an unlawful day rate of $120.

329.     Plaintiff Castillo was not paid overtime and minimum wage for all hours worked as required.

330.     At all times relevant Plaintiff Castillo was deprived of breaks and sick days.

331.     At all times relevant Plaintiff Castillo was subject to unlawful deductions by requiring him to make equipment and supplies purchases for the benefit of the company with Plaintiff Castillo 's own money.

332.     When Plaintiff Figueroa was paid a flat daily rate of $120, he was thus paid a total of $600 for five days or 70 hours, for a straight time rate of $8.57 per hour.

333.     When Plaintiff Castillo worked until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

334.     When Plaintiff Castillo was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Fernando Sanchez**

335.     Plaintiff Fernando Sanchez ("Plaintiff Sanchez") is an adult Hispanic individual who is a resident of Passaic, State of New Jersey.

336.    At all times relevant Plaintiff Sanchez was perceived as an immigrant.

337.    As a Driver for Defendants, Plaintiff Sanchez is a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5), NYLL § 190, N.J.S.A. 34:11-56a1(h) and N.J.S.A. 34:11-4.1(b).

338.    Plaintiff Sanchez was employed by Defendants from in or about 2018 to in or about March 2021.

339.    Ordinarily, Plaintiff Sanchez worked from 7 am to on average 9 pm daily, or 14 hours per day.

340.    Ordinarily, Plaintiff Sanchez worked a seasonal schedule of 5 days per week from March through December (the "regular season") and on average 3 days per week from January through February (the "slow season").

341.    Ordinarily during the regular season, Plaintiff Sanchez worked a schedule of 5 days per week, Monday through Friday.

342.    Plaintiff Sanchez received pay according to a day rate on pay stubs with days worked in place of hours worked.

343.    Plaintiff Sanchez began working at an unlawful day rate of $150.

344.    Plaintiff Sanchez was not paid overtime and minimum wage for all hours worked as required.

345.    At all times relevant Plaintiff Sanchez was deprived of breaks and sick days.

346.    At all times relevant Plaintiff Sanchez was subject to unlawful deductions by being required to pay parking tickets incurred for the benefit of the company at the instruction of the Company.

347.    At various times Plaintiff Sanchez was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

348.    When Plaintiff Sanchez was paid a flat daily rate of $150, he was thus paid a total of $750 per week for 70 hours, for a straight time rate of $10.71 per hour.

349.    When Plaintiff Sanchez worked until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

350.    When Plaintiff Sanchez was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Arismendiz Hidalgo**

351.    Plaintiff Arismendiz Hidalgo ("Plaintiff Hidalgo") is an adult Hispanic individual who is a resident of Passaic County, State of New Jersey.

352.    As a Driver for Defendants, Plaintiff Hidalgo is a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5),  NYLL § 190, N.J.S.A. 34:11-56a1(h) and  N.J.S.A. 34:11-4.1(b).

353.    Plaintiff Hidalgo has been employed by Defendants from in or about September 2018 to February 2022.

354.    Ordinarily, Plaintiff Hidalgo worked from 7 am to on average 9 pm daily, or 14 hours per day.

355.    Ordinarily, Plaintiff Hidalgo worked a seasonal schedule of 5 days per week from March through December (the "regular season") and on average 3 days per week from January through February (the "slow season").

356.    Plaintiff Hidalgo received pay according to a day rate on pay stubs with days worked in place of hours worked, for his work Monday to Friday.

357.    Additionally, at various times in the regular season Plaintiff Hidalgo was required to work Saturday and Sundays on average one weekend a month, which was sometimes paid in cash.

358.    Plaintiff Hidalgo began working at an unlawful day rate of $140.

359.    Plaintiff Hidalgo was not paid overtime and minimum wage for all hours worked as required.

360.    At all times relevant Plaintiff Hidalgo was deprived of breaks and sick days.

361.    At all times relevant Plaintiff Hidalgo was subject to unlawful by being required to pay parking tickets incurred for the benefit of the company at the instruction of the Company.

362.    Additionally, Plaintiff Hidalgo was required to pay for gas money on a trip to the state of Georgia in July 2021. During this period, Plaintiff Hidalgo was required to drive for 11 hours at a stretch. When Plaintiff Hidalgo arrived in Georgia there was no hotel booked for them until 3 am that night. He was called back to work at 6 am that same morning.

363.    At various times Plaintiff Hidalgo was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

364.    When Plaintiff Hidalgo was paid a flat daily rate of $140, and he was thus paid a total of $700 for five days or 70 hours, for a straight time rate of $10 per hour.

365.    When Plaintiff Hidalgo worked until 3 or 4 pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

366.    When Plaintiff Hidalgo was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

367.    Additionally, when Plaintiff Hidalgo along with Plaintiff Calixto was required to clean the warehouse basement and remove furniture that was damaged by a flood in 2021, he was required to work in a wet environment without protective equipment such as boot or gloves for 2 weeks. There Plaintiff Hidalgo became sick with hives from the exposure and had to work while sick for two weeks, knowing it was futile to request the time off.

**Plaintiff Jose Grande Hernandez**

368.    Plaintiff Jose Grande Hernandez ("Plaintiff Hernandez") is an adult Hispanic individual who is a resident of Paterson, State of New Jersey.

369.    At all times relevant Plaintiff Hernandez was perceived as an immigrant.

370.    As a Helper/ Installer for Defendants, Plaintiff Hernandez is a covered employee as defined by FLSA, 29 U.S.C. § 203(e),  NYLL § 651(5), NYLL § 190, N.J.S.A. 34:11-56a1(h) and  N.J.S.A. 34:11-4.1(b).

371.    At no time was Plaintiff Hernandez responsible for the proper loading of the vehicle for safety purposes.

372.    Plaintiff Hernandez was employed by Defendants from in or about September 2020 to in or about mid-March 2022.

373.    Ordinarily, Plaintiff Hernandez worked a seasonal schedule of 5 days per week from March through December (the "regular season") and on average 2 or 3 days per week from January through February (the "slow season").

374.    Ordinarily, Plaintiff Hernandez worked from 7 am to on average 8 pm daily, or 13 hours per day.

375.    Ordinarily, during the regular season, Plaintiff Hernandez worked a schedule of 5 days per week, Monday through Friday.

376.    Plaintiff Hernandez received pay according to a day rate on pay stubs with days worked in place of hours worked.

377.    Plaintiff Hernandez began working at an unlawful day rate of $120, and received a rate of $135 per day at the time of the termination of his employment.

378.    Plaintiff Hernandez was not paid overtime and minimum wage for all hours worked as required.

379.    At all times relevant Plaintiff Hernandez was deprived of breaks and sick days.

380.    At all times relevant Plaintiff Hernandez was subject to unlawful deductions by requiring him to make equipment and supplies purchases for the benefit of the company with Plaintiff Hernandez 's own money.

381.    At various times Plaintiff Hernandez was subject to threats that if he did not accept extra shifts Defendant would withhold his pay for work already performed.

382.    When Plaintiff Hernandez was paid a flat daily rate of $120, he was thus paid a total of $600 for five days or 65 hours work for a straight time rate of $9.23 per hour.

383.    When Plaintiff Hernandez was paid a flat daily rate of $135, he was thus paid a total of $675 for five days or 65 hours work, for a straight time rate of $10.38 per hour.

384.    When Plaintiff Hernandez worked until 3 or 4pm in the afternoon and was paid for a half day only he received an even lower hourly rate.

385.    When Plaintiff Hernandez was called in and sent home after performing a few hours work, he received no pay at all, nor was this time included on his pay stub, in violation of federal and applicable state minimum wage laws.

**Plaintiff Angel M. Vargas Martinez**

386.    Plaintiff Angel M. Vargas Martinez ("Plaintiff A. Martinez") is an adult Hispanic individual who is a resident of Patterson County, State of New Jersey.

387.    As an Installer for Defendants, Plaintiff A. Martinez is a covered employee as defined by FLSA, 29 U.S.C. § 203(e), NYLL § 651(5),  NYLL § 190,  N.J.S.A. 34:11-56a1(h) and N.J.S.A. 34:11-4.1(b).

388.    Plaintiff A. Martinez was employed by Defendants from November 17, 2017 to March 25, 2022

389.    Ordinarily, Plaintiff A. Martinez worked from 7am to on average 9 pm daily, or 14 hours per day.

390.    Plaintiff A. Martinez worked a seasonal schedule that included 5 days per week from March through December ("the regular season") and on average 3 days per week from January through February ("the slow season"). At various times in the regular season Plaintiff A. Martinez was required to work Saturday, or 6 days per week.

391.    During the regular season, Plaintiff A. Martinez ordinarily worked Monday to Friday or 70 hours per week.

392.    Plaintiff A. Martinez received pay according to a day rate on pay stubs with days worked in place of hours worked.

393.    When he worked Saturdays, these days were sometimes paid in cash and not included on his pay stubs.

394.    Plaintiff A. Martinez was initially paid an unlawful day rate of $120 and as an ending rate he was paid an unlawful day rate of $160.

395.    Plaintiff A. Martinez was not paid overtime and minimum wage for all hours worked as required.

396.    At all times relevant Plaintiff A. Martinez was deprived of breaks at all times and deprived of sick days until March 2022.

397.    On or March 25, 2022 Plaintiff A. Martinez went on unpaid leave due to disability.

398.    At all times relevant Plaintiff A. Martinez was subject to unlawful deductions by requiring him to make equipment and supplies purchases for the benefit of the company with Plaintiff A. Martinez 's own money.

399.    When Plaintiff A. Martinez was paid a flat daily rate of $120, he was thus paid a total of $600 for five days or approximately 70 hours, for a straight time rate of $8.57 per hour.

400.    When Plaintiff A. Martinez was paid a flat daily rate of $180, he was thus paid a total of $800 for five days or approximately 70 hours, for a straight time rate of $11.42 per hour.

401.    When Plaintiff A. Martinez worked until 3 or 4 pm in the afternoon he was paid for a half day only.

402.    When Plaintiff A. Martinez was called in and sent home after performing a few hours work, he received no pay at all and this time was not included on his pay stub, in violation of federal and applicable state minimum wage laws.

403.    After making a complaint about his wage and hours to the Department of Labor, Plaintiff A. Martinez was fired and told there was no more work available for him.

404.    That same day Plaintiff A. Martinez  informed the secretary Anais LNU that he would make a claim to Unemployment Insurance.

405.    In response to being so informed, Anais LNU  stated Plaintiff A. Martinez  was allowed to return to work later that day.

406.    Thereafter, Plaintiff A. Martinez went on unpaid leave on or about March 25, 2022 due to disability.

407.    After returning from unpaid leave due to disability on or about July 18, 2022, Plaintiff A. Martinez was presented with a contract by the secretary Anais LNU stating that he was a temporary worker and would be paid $15 an hour.

408.    The contract did not state that he would be paid overtime.

409.    Plaintiff A. Martinez did not sign the contract as he did not want to falsely state that he is a temporary worker.

410.    When on July 19, 2022  Plaintiff A. Martinez told Secretary Anais LNU that he would not sign the contract she told him,  "then there's no work for you."

## COMMON NEW YORK CITY HUMAN RIGHTS LAW ALLEGATIONS

411.    Additionally, at all times relevant, Defendants discriminated  Morales, Polanco, Mixi, Bruno, Calixto, Diaz, Leyva, Luna, Leon, Flores, Herrera, Sanchez, Hidalgo, and Hernandez (hereinafter the "Race Discrimination Plaintiffs") with regard to the terms and conditions of their employment in contravention of New York City Human Rights Law and by subjecting them to a hostile work environment because of their race/ethnicity.

412.    Additionally, all Plaintiffs who were perceived as immigrants (Plaintiffs Mixi, Bruno, Calixto, Diaz, Leyva, Luna, Leon, Flores, Alba, Rodriguez, Herrera, Lopez, Castillo, Sanchez, and Hernandez (hereinafter the "Perceived Immigrant Discrimination Plaintiffs")) were also subjected to hostility and disparate treatment as follows.

413.    Defendants assigned Race Discrimination Plaintiffs and the Perceived Immigrant Discrimination Plaintiffs, a disparate and more onerous workload, and disparate terms and conditions of employment, than that assigned to Defendants' white and non-perceived immigrant employees.

414.    Specifically, Defendants would require the Race Discrimination Plaintiffs and the Perceived Immigrant Discrimination Plaintiffs to work faster and work longer hours than their white  and non-perceived immigrant counterparts.

415.    Defendants would use abusive language to address Race Discrimination Plaintiffs and the Perceived Immigrant Discrimination Plaintiffs thereby creating a hostile work environment for  Race  Discrimination  Plaintiffs  and  the  Perceived  Immigrant  Discrimination  Plaintiffs. Defendants did not address non-Hispanic  and non-perceived immigrant workers in this manner.

416.    Effectively,  Race  Discrimination  Plaintiffs  and  the  Perceived  Immigrant Discrimination Plaintiffs workers were treated as a different caste of workers who were not as valued or granted the same respect and dignity in their work as their non Hispanic and non-perceived immigrant counterparts even when Race Discrimination Plaintiffs and the Perceived Immigrant Discrimination Plaintiffs had equal or greater skills.

417.    Additionally, when Plaintiff Calixto told Defendant Carolina Littman on a video call in or about December 2021 that he believed he and others was being discriminated against, and affirmed that he nonetheless had rights, Defendant Carolina Littman stated that she did not care and that he did not have rights because of his perceived immigration status. He was fired in retaliation that day.

418. Additionally, Race Discrimination Plaintiffs and the Perceived Immigrant Discrimination Plaintiffs have been assigned dangerous work moving boxes in the warehouse for which they have received no training now proper protections.

419. Additionally, Defendants routinely threatened not to pay Race Discrimination Plaintiffs and the Perceived Immigrant Discrimination Plaintiffs and demanded that they work faster and told them that they were "good for nothing." These threats occurred at the warehouse and often by telephone while Plaintiffs were performing work in New York City.

420. Moreover, Race Discrimination Plaintiffs and the Perceived Immigrant Discrimination Plaintiffs never received antidiscrimination training on the job.

421. All Race Discrimination Plaintiffs and the Perceived Immigrant Discrimination Plaintiffs were subjected to a hostile work environment by Defendants because of their Hispanic race or ethnicity and/or perceived immigration status.

422. Race Discrimination Plaintiffs and the Perceived Immigrant Discrimination Plaintiffs suffered emotional distress, humiliation and feelings of powerlessness as a result of Defendants' actions.

## RETALIATION AGAINST PLAINTIFFS CALIXTO, DIAZ, LEON, ALBA AND A. MARTINEZ FOR THEIR INVOLVEMENT IN THE INSTANT COMPLAINT

423. Immediately preceding the filing of the original complaint in this matter on April 25, 2022 the Plaintiffs Calixto, Diaz, Leon, and Alba were still employed by Defendants.

424. In or about the week of April 17, 2022, days before the filing of the original complaint, an agent of Defendants informed various of the then-currently employed Plaintiffs that Defendant Chaim Littman had received a copy of the complaint and was disappointed to see the names of various current long-term employees as persons involved and stating that he would fire at least some of them for their involvement.

425.    Thereafter from in or about April 28 through May 2, 2022, all then current employees of Defendants were terminated for their involvement in the planned lawsuit.

426.    Specifically, Plaintiffs Calixto, Diaz, Leon, and Alba were all fired and told that there was no work available for them.

427.    During this period from April 28 through May 2, 2022, however, Defendants hired approximately 6 new workers.

428.    With respect to Plaintiff A. Martinez, as alleged above, upon his return from leave due to disability, and after the instant complaint was filed, he was  fired after he refused to sign a document falsely claiming he is a temporary worker.

## **FIRST CLAIM FOR RELIEF**

**(FLSA Minimum Wage Claim, 29 U.S.C. §§ 201 *et seq.,* Brought by all Plaintiffs , on Behalf of Themselves Against All Defendants)**

429.    All Plaintiffs, on Behalf of Themselves, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

430.    At all times relevant, each Defendants have been, and/or continue to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

431.    At all times relevant, Defendants employed All Plaintiffs, as "employees" within the meaning of FLSA, 29 U.S.C. § 203.

432.    Defendants were required to pay All Plaintiffs at a rate not less than the minimum wage rate under the FLSA for all hours worked.

433.    Defendants failed to pay All Plaintiffs time they were made to load equipment and dismissed after several hours, receiving no pay whatsoever.

434.    Further, Defendants were prohibited from taking unlawful deductions/ kickbacks from the wages of All Plaintiffs by 29 CFR § 531.35.

435.    Upon information and belief, Defendants knowingly required All Plaintiffs to pay various expenses on behalf of the Company including parking tickets, gas, supplies, and equipment costs.

436.    Considering all the hours worked, amounts paid and uncompensated hours worked (and unreimbursed expenses, each of the plaintiffs worked at least 1 workweek in which their effective hourly rate was less than $7.25.

437.    Upon information and belief, Defendants knowingly failed to pay All Plaintiffs the required minimum wage under the FLSA for each hour worked.

438.    All Plaintiffs, on Behalf of Themselves seek damages for their unpaid compensation, liquidated damages as provided by the FLSA, attorneys' fees and costs, along with such other relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

**(FLSA Overtime Claim, 29 U.S.C. §§ 201 *et seq.*, Brought by Non-Driver Plaintiffs— Antonio Bruno, Isaac Diaz, Edgar Luna, Cornelio Rincon Leon, Leonel Flores, Edwin Alba, Raul Herrera, Luciano Lopez, Nicholas Figueroa, Luis Castillo, Fernando Sanchez, Luciano Calixto, Arismendiz Hidalgo, Jorge Martinez,  Jose Grande Hernandez and Angel M. Vargas Martinez— on Behalf of Themselves Against All Defendants)**

439.    Antonio Bruno, Isaac Diaz, Edgar Luna, Cornelio Rincon Leon, Leonel Flores, Edwin Alba, Raul Herrera, Luciano Lopez, Nicholas Figueroa, Luis Castillo, Fernando Sanchez, Luciano Calixto, Arismendiz Hidalgo, Jorge Martinez, Jose Grande Hernandez and Angel M.

Vargas Martinez (the "Non-Driver Plaintiffs"), on Behalf of Themselves, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

440.   At all times relevant, each Defendant has been, and/or continue to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

441.   At all times relevant, Defendants employed the Non-Driver Plaintiffs, as "employees" within the meaning of FLSA, 29 U.S.C. § 203.

442.   At all times relevant, Defendants failed to pay the Non-Driver Plaintiffs overtime calculated based on a regular rate which cannot be less than the applicable state minimum wage pursuant to 29 C.F.R. 778.5, for all hours in excess of 40 hours per week

443.   Upon information and belief, Defendants knowingly deprived Non-Driver Plaintiffs of overtime.

444.   All Non-Driver Plaintiffs seek damages for their unpaid overtime, liquidated damages as provided by the FLSA, attorneys' fees and costs, along with such other relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF

**(New York State Minimum Wage Act Claim, NYLL Article 19 §§ 650 *et seq.*, Brought by**

**All Plaintiffs on Behalf of Themselves Against All Defendants)**

445.   All Plaintiffs, on behalf of themselves, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

446.   Throughout the period covered by the applicable statute of limitations and upon information and belief, Defendants knowingly paid Plaintiffs less than the minimum wage as required by NYLL and the supporting regulations of the New York State Department of Labor.

447.    Defendants did not pay the minimum wage for all hours worked by Plaintiffs or for all hours worked by Plaintiffs while in New York.

448.    Upon information and belief, Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of the NYLL.

449.    Plaintiffs seek to recover their unpaid compensation, liquidated damages pursuant to NYLL, Article 6, § 198, attorneys' fees, costs, pre- and post-judgment interest along with such other relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

**(New York State Minimum Wage Act - Overtime Claim, NYLL § 650 *et seq.*, Brought by Plaintiffs on Behalf of Themselves Against All Defendants)**

450.    Plaintiffs, on behalf of themselves, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

451.    Throughout the period covered by the applicable statute of limitations and upon information and belief, Defendants willfully and repeatedly failed to pay Plaintiffs at the overtime rate for hours worked in excess of forty (40) hours per workweek as required by NYLL for all hours in excess of 40 in a workweek, or for all hours worked in excess of 40 per workweek by Plaintiffs while in New York.

452.    Plaintiffs seek and are entitled to recover their respective unpaid compensation, damages pursuant to NYLL, Article 6, § 198, attorneys' fees, costs, pre- and post-judgment interest along with such other relief as this Court deems just and proper.

453.    Plaintiffs have been damaged in an amount as yet determined, plus liquidated damages.

## FIFTH CLAIM FOR RELIEF

**(Notice-and-Recordkeeping Requirements, NYLL § 195(3), Brought by Plaintiffs on Behalf of Themselves Against All Defendants)**

454.    Plaintiffs, on behalf of themselves, repeat, reiterate, and incorporate each and every preceding paragraph as if set forth fully herein.

455.    Defendants have failed to provide Plaintiffs with wage statements or explanations of how their wages were calculated in violation of NYLL § 195(3) for all hours worked or for all hours worked by Plaintiffs while in New York .

**SIXTH CLAIM FOR RELIEF**

**(Notice-and-Recordkeeping Requirements, NYLL § 195(1), Brought by Plaintiffs on Behalf of Themselves Against All Defendants)**

456.    Plaintiffs, on behalf of themselves, repeat, reiterate, and incorporate each and every preceding paragraph as if set forth fully herein.

457.    Defendants have failed to provide plaintiffs with wage notices as required on February 1 of every year in violation of NYLL § 195(1) for all hours worked or for all hours worked by Plaintiffs while in New York .

**SEVENTH CLAIM FOR RELIEF**

**(Unlawful Deductions, NYLL § 193 Brought by Plaintiffs Against all Defendants)**

458.    Plaintiffs repeat, reiterate and incorporate each and every preceding paragraph as if set forth fully herein.

459.    Throughout the period covered by the applicable statute of limitations, Defendants violated NYLL §193 by unlawfully requiring to pay for parking tickets, gas, equipment and supplies for the benefit of Defendants  during Plaintiffs' employment or during Plaintiffs' hours worked while in New York.

460.    Plaintiffs have been damaged in an amount as yet determined, plus liquidated damages.

### EIGHTH CLAIM FOR RELIEF

**(Discrimination, New York City Human Rights Law § 8-107(1)(a): Unlawful Discriminatory Practices Brought by Morales, Polanco, Mixi, Bruno, Calixto, Diaz, Leyva, Luna, Leon, Flores, Herrera, Sanchez, Hidalgo, Hernandez Against Defendant Next Stop 2006 and Defendant Chaim Littman**

461.    Plaintiffs Morales, Polanco, Mixi, Bruno, Calixto, Diaz, Leyva, Luna, Leon, Flores, Herrera, Sanchez, Hidalgo, Hernandez repeat and reallege all the allegations contained in this complaint above.

462.    The acts alleged in part occurred in New York City.

463.    The acts described constitute discrimination on the basis of Plaintiffs' Hispanic race or ethnicity in violation of the New York City Human Rights Law. N.Y.C. Admin. Code § 8-107(1)(a).

464.    Due to Defendants' violation of the New York City Human Rights Law, Plaintiffs are entitled to recover from Defendants damages in a sum to be determined by a jury.

### NINTH CLAIM FOR RELIEF

**(Discrimination, New York City Human Rights Law § 8-107(1)(a)): Unlawful Discriminatory Practices Based on Perceived Disability Brought by Plaintiff Mixi Against Defendant Next Stop 2006 and Defendant Chaim Littman**)

465.    Plaintiff Mixi repeats and realleges all the allegations contained in this complaint above.

466.    The acts described constitute discrimination on the basis of Plaintiff Mixi's perceived disability in violation of the New York City Human Rights Law. N.Y.C. Admin. Code § 8-107(1)(a).

467.    The acts alleged in part occurred in New York City.

468.    Due to Defendants' violation of the New York City Human Rights Law, Plaintiff is entitled to recover from Defendants damages in a sum to be determined by a jury.

## TENTH CLAIM FOR RELIEF

**(Retaliation, New York City Human Rights Law 107(19); Unlawful Discriminatory Practices --Retaliation Brought by Plaintiffs Mixi, Calixto, Diaz, Leon, Alba, and A. Martinez Against Defendant Next Stop 2006 and Defendant Chaim Littman)**

469.    Plaintiffs Mixi, Calixto, Diaz, Leon, Alba, A. Martinez and repeat and reallege all the allegations contained in this complaint.

470.    The acts described constitute retaliation on the basis of Plaintiff Mixi's request for accommodation in violation of the New York City Human Rights Law.

471.    The acts alleged in part occurred in New York City.

472.    Further Plaintiffs Calixto, Diaz, Leon, Alba, and A. Martinez were subject to unlawful termination for filing the original complaint in this action which included NYCHRL allegations.

473.    Due to Defendants' violation of the New York City Human Rights Law, Plaintiffs Mixi, Calixto, Leon, Alba, Diaz and A. Martinez are entitled to recover from Defendants damages in a sum to be determined by a jury.

## ELEVENTH CLAIM FOR RELIEF

**(Sick Days, NYLL §§ 196(b), Brought by Plaintiffs Against All Defendants)**

474.    Plaintiffs on behalf of themselves repeat, reiterate and incorporate each and every preceding paragraph as if set forth fully herein.

475.    Throughout the period covered by the applicable statute of limitations, Defendants unlawfully deprived Plaintiffs of sick days in violation of the NYLL.

476.    At all times Plaintiffs each performed more than 80 hours work per year in New York City.

477.    Plaintiff have been damaged in an amount as yet determined, plus liquidated damages.

## TWELFTH CLAIM FOR RELIEF

### (Sick Days, N.J.S.A. Brought by Plaintiffs  Against All Defendants)

478.    Plaintiffs on behalf of themselves repeat, reiterate and incorporate each and every preceding paragraph as if set forth fully herein.

479.    Throughout the period covered by the applicable statute of limitations, Defendants unlawfully deprived Plaintiffs of sick days in violation of the NJ. S.A.11D-2 .

480.    Plaintiff have been damaged in an amount as yet determined, plus liquidated damages.

## THIRTEENTH CLAIM FOR RELIEF

**(NJ Prohibition of Retaliation, N.J.S.A. § 34:11-56a and N.J.S.A. § 34:11-56a25 Brought by Plaintiffs Calixto, Diaz, Leon, Alba, and A. Martinez on Behalf of Themselves against All Defendants)**

481.    Plaintiffs Calixto, Diaz, Leon, Alba, and A. Martinez, on behalf of themselves, repeat, reallege, and incorporate each and every preceding paragraph as if set forth fully herein.

482.    Throughout the period covered by the applicable statute of limitations Defendants retaliated against Plaintiff A. Martinez, for complaining about the wage violations in yet another violation of the NYWHL by making threats of a frivolous litigation and terminating their employment after they requested  lawful pay and after Plaintiff A. Martinez made a complaint to the Department of Labor.

483.    Additionally, in or about April 28 through May 2, 2022 Plaintiffs Calixto, Diaz, Leon, and Alba were subject to pretextual retaliatory termination because of their involvement in the instant lawsuit.

484.    Further on or about July 19, 2022 Plaintiff A Martinez was subject to termination of his employment after he would not sign a contract falsely stating his employment was temporary.

485.    Upon information and belief  Plaintiff A Martinez was offered this contract in retaliation for filing the instant lawsuit.

486.    Plaintiffs Calixto, Diaz, Leon, Alba, and A. Martinez seek to recover backpay and penalties pursuant to the  NYWHL, along with such other relief as this Court deems just and proper.

## FOURTEENTH CLAIM FOR RELIEF

**(NJ Conscientious Employee Protection Act  (CEPA) Brought by Plaintiffs Mixi, Calixto, Diaz, Leon, Alba, and A. Martinez on Behalf of Themselves against All Defendants)**

487.    Plaintiffs Mixi, Calixto, Diaz, Leon, Alba, and A. Martinez, on behalf of themselves, repeat, reallege, and incorporate each and every preceding paragraph as if set forth fully herein.

488.    Plaintiff Mixi's request for accommodation and sick days resulting in his retaliatory termination.

489.    Throughout the period covered by the applicable statute of limitations Defendants retaliated against Plaintiff A. Martinez, for complaining about the wage violations by making threats of a frivolous litigation and terminating their employment after they requested  lawful pay and after Plaintiff A. Martinez made a complaint to the Department of Labor.

490.    Additionally, in or about April 28 through May 2, 2022 Plaintiffs Calixto, Diaz, Leon, and Alba, were subject to pretextual retaliatory termination because of their involvement in the instant lawsuit.

491.    Further on or about July 19, 2022 Plaintiff A Martinez was subject to termination of his employment after he would not sign a contract falsely stating his employment was temporary.

492.    Upon information and belief  Plaintiff A Martinez was offered this contract in retaliation for filing the instant lawsuit.

493.    (1) a reasonable belief that the employer's conduct was violating either a law, rule, regulation or public policy; (2) they each performed a "whistle blowing" activity; (3) they each suffered an adverse employment action; and (4) these adverse actions were  causally connected to their protected acts.

494.    Plaintiffs Mixi, Calixto, Diaz, Leon, Alba, and A. Martinez  seek to recover all remedies available under CEPA.

## FIFTEENTH CLAIM FOR RELIEF

**(FLSA Prohibition of Retaliation, 29 U.S.C. §§ 215(a)(3) Brought by Plaintiffs Calixto, Diaz, Leon, Alba, and A. Martinez on Behalf of Themselves against All Defendants)**

495.    Plaintiffs Calixto, Diaz, Leon, Alba, and A. Martinez, on behalf of themselves, repeat, reallege, and incorporate each and every preceding paragraph as if set forth fully herein.

496.    Throughout the period covered by the applicable statute of limitations Defendants retaliated against Plaintiff A. Martinez, for complaining about the wage violations in yet another violation of the FLSA by making threats to terminate their employment after they requested lawful pay and/or for making a complaint regarding wages to the Department of Labor.

497.    Additionally, in or about April 28 through May 2, 2022, Plaintiffs Calixto, Diaz, Leon, and Alba were subject to pretextual retaliatory termination because of their involvement in the instant lawsuit.

498.    Further on or about July 19, 2022 Plaintiff A. Martinez was subjected to pretextual retaliatory termination because of his involvement in the instant lawsuit.

499.    Plaintiffs Calixto, Diaz, Leon, Alba, and A. Martinez seek to recover backpay and penalties pursuant to FLSA, along with such other relief as this Court deems just and proper.

## <u>SIXTEENTH CLAIM FOR RELIEF</u>

**(Discrimination, New York City Human Rights Law ¬ß 8-107(1)(a): Unlawful Discriminatory Practices Brought by All Perceived Immigrant Plaintiffs Mixi, Bruno, Calixto, Diaz, Leyva, Luna, Leon, Rodriguez, Flores, Alba, Herrera, Lopez, Castillo, Sanchez, and Hernandez against Defendant Next Stop 2006 and Defendant Chaim Littman)**

500.    All Perceived Immigrant Plaintiffs repeat and reallege all the allegations contained in this complaint above.

501.    The acts described constitute discrimination on the basis of Plaintiffs' perceived immigration status in violation of the New York City Human Rights Law. N.Y.C. Admin. Code ¬ß 8-107(1)(a).

502.    The acts alleged in part occurred in New York City.

Due to Defendants' violation of the New York City Human Rights Law, Plaintiffs are entitled to recover from Defendants damages in a sum to be determined by a jury.

## SEVENTEENTH CLAIM FOR RELIEF
**NJWHL Minimum Wage and Overtime Pay Violations By all Plaintiffs Against All Defendants**

489.    Plaintiffs, on behalf of themselves, re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

490.    The NJHWL, N.J. Stat. Ann. ¬ß 34:11-56a4(a), entitles employees to an amount equal to or greater than the minimum wage for all hours worked.

491.    The NJHWL, N.J. Stat. Ann. ¬ß 34:11-56a4(b), requires employers to pay employees an overtime premium at a rate of "not less than 1and a half times such employee's regular hourly rate for each hour of working time in excess of 40 hours in any week."

492.    While the "regular hourly rate" is typically based on the rates actually paid to the employee, that rate, of course, cannot be less than the applicable statutory minimum wage for the work performed.

493.    Plaintiffs' "regular hourly rate" for purposes of calculating overtime compensation under the NJWHL was the higher of the state minimum wage, the federal minimum wage and the regular rate based on commissions paid in that week for all worked, or for all hours worked by Plaintiffs while in New Jersey.

494.    Plaintiffs are not exempt under state law from an entitlement to minimum wages or overtime pay.

495.    As described herein, Plaintiffs earned less than the state minimum wage for all hours worked or for all hours worked by Plaintiffs while in New Jersey.

496.    Plaintiffs also worked in excess of forty (40) hours per week, and Defendants unlawfully failed to pay Plaintiffs full and proper overtime wages for all hours worked in excess of forty per week, or for all hours worked in excess of forty per week by Plaintiffs while in New Jersey because Defendants unlawfully treated Plaintiffs exempt from overtime pay.

497.    As a result of these violations, Defendants are liable for unpaid minimum and overtime wages, interest, liquidated damages equal to 200% of the unpaid wages, and attorneys' fees and costs (with appropriate fee enhancements), as well as further relief as described below.

## EIGHTEENTH CLAIM FOR RELIEF
### NJWPL, N.J.S.A. ¬ß 34:11-4.1(c) By all Plaintiffs Against All Defendants

498.    Plaintiffs, on behalf of themselves, re-allege and incorporate by reference the allegations contained in the paragraphs above as if fully set forth herein.

499.    The NJWPL provides employees a private right of action for violations of the NJWHL and other state wage and hour laws. N.J.S.A. ¬ß 34:11-4.10(c).

500.    As described herein, Defendants violated the NJWPL by failing to pay Plaintiffs minimum wages for all hours worked or for all hours worked by Plaintiffs while in New Jersey, as well as overtime wages for each hour worked over forty (40) in a workweek as required by the NJWHL for all hours worked in excess of forty per week, or for all hours worked in excess of forty per week by Plaintiffs while in New Jersey.

501.    Defendants' violation of the NJWPL was not an inadvertent error made in good faith; nor were there any reasonable grounds for belief that Defendants' actions were not a violation of the NJWHL and the NJWPL. Rather, in flagrant disregard of New Jersey law, Defendants made no attempt to pay Plaintiffs the minimum and overtime wages required by state law for all hours worked or for all hours worked by Plaintiffs while in New Jersey., despite having knowledge of these legal mandates.

502.    Pursuant to N.J.S.A. ¬ß 34:11-4.10(c), employers such as Defendants, who fail to pay employees wages in conformance with state law, shall be liable to the employees for the unpaid wages, liquidated damages equal to 200% of the unpaid wages, plus court costs, expenses, and attorneys' fees incurred.

## **RELIEF SOUGHT**

**WHEREFORE**, Plaintiffs, on behalf of themselves, request relief as follows:

A.  An order declaring that Defendants violated the FLSA in the manners stated in this complaint;

B.  An order declaring that Defendants' violations of the FLSA were willful;

C.  An order declaring that Defendants violated the NYLL, and/or the  NJWPA and the NJWHL in the manners stated in this complaint;

D.  An order declaring that Defendants' violations of the NYLL , and/or the  NJWPA and the NJWHL were willful;

E.  An award of overtime compensation under the FLSA and NYLL , and/or the  NJWPA and the NJWHL;

F.  An award of minimum wage compensation under the FLSA and NYLL  , and/or the NJWPA and the NJWHL;

G.  An award of kickbacks and unlawful deductions under the FLSA and NYLL , and/or the NJWPA and the NJWH;

H.  An award  of penalties in connection with the wage stub and pay notices provision of the NYLL , and/or the  NJWPA and the NJWHL;

I.  Retaliation penalties under the FLSA and N.J.S.A. 34:11-56a; 34:11-56a25  to Plaintiffs A. Martinez, Diaz, Leon, and Alba;

J.  An award of liquidated damages pursuant to the FLSA and the NYLL and/or the  NJWPA and the NJWHL;

K.  All relief pursuant to NYC Human Rights Law for the Race Discrimination and Perceived Immigrant Plaintiffs' emotional distress and compensatory damages;

L.  All relief pursuant to NYC Human Rights Law for Plaintiff Mixi's emotional distress and compensatory damages resulting from his discrimination and retaliation claims;

M.  All relief pursuant to NYC Human Rights Law for Plaintiffs' A. Martinez, Diaz, Leon, and Alba, emotional distress and compensatory damages resulting from their retaliation claims;

N.  All relief pursuant to NJ CEPA;

O.  All penalties available under the applicable laws;

P.  Attorneys' fees pursuant to 29 U.S.C. § 216, NYLL § 663, the  NJWPA and the NJWHL and all other applicable statutes;

Q.  Interest as provided by law; and

R.  Such other relief as this Court deems just and proper.

## **JURY TRIAL**

Plaintiffs demand a jury trial for all causes of action and claims for which they have a right to a jury trial.

Date:   June 30, 2023                              Respectfully submitted,

**GOODLEY MCCARTHY LLC**
Ryan P. McCarthy
NJ Attorney ID: 219022016
ryan@gmlaborlaw.com
James E. Goodley
NJ Attorney ID: 048572013
james@gmlaborlaw.com
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 394-0541

**JULIEN  MIRER  SINGLA  &  GOLDSTEIN, PLLC**

*/s/ Ria Julien*
By: Ria Julien (admitted *pro hac vice*)
Jeanne Mirer (*pro hac vice* motion forthcoming)
*Attorney for Plaintiffs*
1 Whitehall Street, 16th Floor
New York, NY 10004
(212) 231-2235
rjulien@workingpeopleslaw.com